UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KORI ANN SIERRAS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 5:20-cv-01378-LCB |
| ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

On September 17, 2020, Plaintiff Kori Ann Sierras filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's adverse action under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. 1). The Commissioner filed an Answer on January 19, 2021. (Doc. 9). Sierras filed a Brief in Support of her position on March 2, 2021 (Doc. 11), and the Commissioner filed a Response on April 5, 2021. (Doc. 13). Sierras filed a Reply Brief on April 19, 2021. (Doc. 14). The appeal has been fully briefed and is ripe for review. For the following reasons, the Commissioner's final decision is **AFFIRMED**.

1

## I. Background

Sierras filed an application for social security disability benefits and supplemental security income benefits on January 4, 2018. (Tr. 172-73, 174-78).[1] Her claim was denied on March 6, 2018. (Tr. 101-02). After her claim was denied, Sierras requested a hearing before an Administrative Law Judge. (Tr. 113-14). Her request was granted, and the hearing was held on July 31, 2019. Sierras was represented by counsel at her hearing. (Tr. 36-67). Jewel Elizabeth Bishop Euto, a Vocational Expert, also testified at the hearing. (Tr. 61-66). The ALJ issued an adverse decision on Sierras's claims on September 25, 2019. (Tr. 17-30). Sierras then requested review of the ALJ's decision by the Social Security Appeals Council. The Appeals Council affirmed the ALJ's decision on July 23, 2020. (Tr. 1-3). This lawsuit followed.

## II. The ALJ's Analysis

The ALJ issued a written opinion explaining his decision following the hearing. (Tr. 17-30). In his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. 20 C.F.R. § 416.920(a). In accordance with that standard, each step is followed sequentially and, if it's

---

[1] "Tr" denotes the page number assigned in the administrative record filed by the Commissioner on January 19, 2021. *See* (Docs. 9-3 to 9-10).

determined that the claimant is or is not disabled at a particular evaluative, the ALJ will not proceed to the next step.

The first step of the five-step analysis requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Sierras had not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2017. (Tr. 19). Accordingly, the ALJ moved to step two.

At step two, ALJs must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities. . . ." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. The ALJ found that Sierras had the following severe impairments: "fibromyalgia; obesity; depressive disorder and anxiety disorder." (Tr. 19). The ALJ found, however, that Sierras's obstructive sleep apnea was not severe because it did not have more than a minimal limitation on her ability to perform work activities. *Id.* at 20.

The third step of the analysis requires the ALJ to determine whether the claimant's impairments or a combination thereof meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. If not, the ALJ proceeds to the next step. The ALJ found that Sierras's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four. (Tr. 20-21).

Step four of the evaluation requires an ALJ to determine the claimant's residual functional capacity, and whether she has the RFC to perform the requirements of any past relevant work. 20 C.F.R. § 416.920(f). The term "past relevant work" means work performed within the last 15 years before the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. The ALJ found that Sierras did not have the RFC to perform her past work as a telemarketer. (Tr. 28).

At the final step, the ALJ must consider whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If a claimant can do other work, she is not disabled; if not, she is. According to the ALJ, Sierras had the RFC to perform sedentary work as defined at 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain physical and mental limitations. (Tr. 21-28). After hearing

testimony from VE Jewel Elizabeth Bishop Euto, the ALJ determined that there were jobs existing in significant numbers in the national economy that Sierras would be able to perform given her RFC, age, education, and work experience. Specifically, the ALJ opined that Sierras could perform the work of a sealer, tipper, machine, and document preparer. (Tr. 29). The ALJ also found that these jobs existed in sufficient numbers in the national economy to provide Sierras an employment opportunity. Therefore, the ALJ concluded Sierras was not disabled as defined by the Social Security Administration.

### III.   Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). "This limited review precludes deciding facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings.

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### IV. Sierras's Arguments

Sierras presents three issues for review, claiming each constitutes reversible error. (Doc. 11). First, Sierras argues that the ALJ improperly equated record notations of "moderate" under the DSM-5 medical standard with the requirements of a finding of a "moderate" mental limitation under the Social Security Act regulations. Second, Sierras contends that the ALJ improperly discounted Dr. Ammar Alrefai's medical opinion. Dr. Alrefai treats Sierra for anxiety and depression. Finally, Sierras asserts that the ALJ improperly discredited her subjective complaints of pain when determining her RFC.

**A.   Sierras is not entitled to relief on her claim that the ALJ improperly equated the use of "moderate" in the record under DSM-5 with "moderate" under the SSA regulations.**

Sierras's chief argument is that the ALJ relied on Dr. Alrefai's use of the term "moderate" in his evaluation records to find that Sierras suffered from a "moderate" mental limitation. According to Sierras, Dr. Alrefai used the term "moderate" under the Diagnostic and Statistical Manual of Mental Disorders Fifth Edition, which differs significantly from the meaning of "moderate" under the Social Security regulations. Essentially, Sierras argues that the ALJ committed reversible error by

equating the term moderate as used by Dr. Alrefai under the DSM-5 standard with the requirements under the Social Security regulations. This argument fails.

Sierras dedicates the bulk of her briefs detailing the DSM-5 standard and what qualifies as a moderate limitation. She also exerts great effort explaining the differences between moderate under the DSM-5 standard and the relevant regulations here. What Sierras doesn't do, however, is point to any part of the ALJ's written opinion where he determines that Sierras had moderate mental limitations *because* Dr. Alrefai found that Sierras had moderate mental limitations. That is, the ALJ *didn't* say that Dr. Alrefai's moderate limitation findings constituted evidence that Sierras was moderately limited under the Social Security regulations. Instead, Sierras cites to 81 Fed. Reg. 66137, where the Commissioner clarified that the DSM-5 standard uses the term moderate differently than the Social Security regulations, and then repeats conclusory allegations that the ALJ equated the standard with the regulations.

The ALJ's decision speaks for itself: he didn't commit the alleged error. In fact, the ALJ's written opinion *never explicitly mentions* Dr. Alrefai's notations that Sierras's conditions were moderate. To argue, as Sierras does, that the ALJ used those notations to reach his conclusion is, at best, a stretch. Instead, what the ALJ did actually explicitly discuss and cite was a wide variety of objective medical evidence. For example, the ALJ consulted Dr. Alrefai's evaluation records, Dr.

Rogers's evaluation report, and various treatment records including notes from Valley Behavioral Services. (Tr. 25-27). And all the evidence cited by the ALJ supports his finding that Sierras was moderately limited under the Social Security regulations. Simply put, the ALJ consulted the whole record, evaluated objective medical evidence, and thoroughly and carefully considered the weight of the evidence. At no point did the ALJ purport to find that Sierras was moderately limited because Dr. Alrefai used the word moderate in his notes. Therefore, the ALJ didn't err by failing to explicitly differentiate the term moderate from the DSM-5 standard and the Social Security regulations, and Sierras is not entitled to relief on this issue.

> **B. Sierras is not entitled to relief on her claim that the ALJ erred by giving the medical opinion of Dr. Alrefai little weight.**

Next, and relatedly, Sierras argues that the ALJ erred by finding that Dr. Alrefai's medical opinion concerning Sierras's limitations from her conditions was unpersuasive. (Tr. 25-27). But this argument largely amounts to Sierras rehashing her DSM-5 argument. For the reasons above, the Court doesn't find this argument persuasive.

Sierras also cites case law and regulations that are now outdated and no longer in effect, arguing that Dr. Alrefai's opinion, as a treating physician, is entitled to greater weight. Finally, Sierras asserts that the record evidence supports Dr. Alrefai's opinion more than it supports the ALJ's decision.

8

These arguments fail primarily because they are wholly reliant on outdated regulations and case law. Most importantly, Sierras concedes in her Reply that the regulations found in 20 C.F.R. § 404.1520c control in her case. The current regulations followed by ALJs in reaching their decisions affirmatively disclaim any formal physician hierarchy. In conducting their analysis, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Accordingly, the ALJ, by the terms of the binding regulations, made no error in not discounting Dr. Alrefai's opinion for good cause.

Instead, so long as the ALJ supported his finding by substantial evidence, this Court must affirm. Here, the ALJ specifically cited to an array of objective medical evidence that supports his finding Dr. Alrefai's opinion unpersuasive. For example, the ALJ cited to several of Dr. Alrefai's examination records showing that Sierras's mental impairments were mild and controlled with medication. (Tr. 26). Additionally, the ALJ cited Dr. Jon Rogers's psychological evaluation of Sierras, which showed that Sierras had normal articulation, broad affect, full orientation, could recall activities of the prior day and three objects after a delay, knew current events and proverbs, and demonstrated fair judgment. *Id.* Ultimately, the ALJ cited to a host of objective medical evidence. *See* (Tr. 25-27). This evidence is sufficient

to support the ALJ's finding Dr. Alrefai's opinion unpersuasive about the limitations faced by Sierras. Therefore, the ALJ committed no reversible error in considering the medical opinion of Dr. Alrefai.

In addition, Sierras generally contends throughout her brief that the evidence in the record supports a finding of disability more than it supports the ALJ's conclusion. On this issue, Sierras cites evidence that she contends supports a finding of disability in Dr. Alrefai's medical records and argues that the evidence shows that the ALJ did not support his conclusion by substantial evidence. But these assertions are paradigmatic examples of requests for the Court to reweigh the evidence, which it cannot do. The scope of judicial review here is very narrow. This Court is unable to "mak[e] credibility determinations or re-weigh[] the evidence." *Moore*, 405 F.3d at 1211. That is, the Court's role is not to evaluate the strength of either side's evidence nor to challenge the correctness of the ALJ's conclusion. Rather, if the ALJ supports his decision by substantial evidence, the Court must affirm. *Bloodsworth*, 703 F.2d at 1239. And, as explained above, the ALJ has supported his finding here with substantial evidence. Therefore, the ALJ supported his decision finding Dr. Alrefai's opinion unpersuasive by substantial evidence and Sierras is not entitled to relief on this issue.

### C. Sierras is not entitled to relief on her claim that the ALJ erred in determining that her subjective symptoms were inconsistent with the objective medical evidence.

Sierras argues that the ALJ incorrectly determined that her subjective statements of pain and limitation were inconsistent with the objective medical evidence of fibromyalgia and obesity. (Tr. 23-25). Essentially, Sierras argues that the ALJ erred in making a credibility determination against Sierras's subjective statements.

Sierras's specific argument on appeal is that the ALJ erred in discrediting her complaints of pain for fibromyalgia because the evidence relied on by the ALJ did not conform with SSR 12-2p. According to Sierras, to properly determine the severity and limitation of her fibromyalgia, SSR 12-2p required the ALJ to explicitly apply its diagnostic criteria. This argument misses the mark. In this Circuit, explicit application of SSR 12-2p is not required. Rather, there is no error when the ALJ "considered the medical evidence, found that [the claimant] had a severe impairment, and evaluated the impairment using the five-step process." *Sorter v. SSA, Comm'r*, 773 Fed. Appx. 1070, 1073 (11th Cir. 2019). Here, the ALJ's analysis of a variety of objective medical evidence and records clearly demonstrates that he considered the medical evidence. (Tr. 23-25). Further, the ALJ found that fibromyalgia was a severe impairment, (Tr. 19), and thoroughly evaluated that impairment using the five-step process. Therefore, the fact that the ALJ did not

11

expressly reference the requirements under 12-2p in discrediting Sierras's subjective complaints of pain for fibromyalgia was not error.

So, what remains of Sierras's argument is the ALJ did not support his decision to discredit the subjective complaints of pain with substantial evidence. Put differently, Sierras argues that the ALJ erred in making a credibility determination against her subjective statements. Ultimately, credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). So long as the ALJ clearly articulates a credibility determination and supports it with substantial evidence, it will not be disturbed. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Generally, when an ALJ supports a finding discrediting a claimant's subjective testimony of pain with substantial evidence, the court will affirm the ruling. *Belle v. Barnhart*, 129 Fed. Appx. 822, 826 (11th Cir. 2005). Importantly, when the objective evidence shows that the claimant controls the underlying condition by conservative treatment, including through medication, it is not error for the ALJ to find that the objective evidence controls over the subjective testimony of the claimant. *Id.*; *see also Brown v. Comm'r of Soc. Sec.*, 680 Fed. Appx. 822, 826 (11th Cir. 2017).

First, it is important to note that the ALJ did not find that Sierras had no medical impairments. Rather, the ALJ reviewed Sierras's medical records and found that they supported a finding that she suffered from severe impairments of

fibromyalgia and obesity. (Tr. 19). However, the ALJ, upon review of the entire record, found that the impairments were not as limiting as Sierras claimed in her subjective statements. In support of those findings, the ALJ highlighted numerous records showing that Sierras controlled the symptoms she experienced well through conservative treatment. (Tr. 23-25). For her fibromyalgia, the ALJ cited records from Dr. Jason Lee Kelly and Rheumatology Associates of North Alabama where examinations showed that Sierras controlled and managed her condition through treatment. (Tr. 23-24). Additionally, the ALJ cited evidence showing that medication effectively treated her symptoms. (Tr. 25). For her obesity, the ALJ noted that the record showed that Sierras has maintained the ability to lose large amounts of weight, and that the record demonstrates that her obesity has not limited her ability to work. *Id.*

Accordingly, the record contains sufficient evidence on which the ALJ based his finding that Sierras's subjective complaints regarding the severity of her symptoms were not credible. The records Sierras cite establish that she has medical conditions that would cause some amount of pain and discomfort. But those records alone do not prove that her pain is so severe that it rises to the level of a disability. Therefore, the Court finds that the ALJ's determination that Sierras's subjective statements were inconsistent with the objective medical evidence supported by substantial record evidence.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. A final order will be entered separately.

**DONE** and **ORDERED** this December 21, 2021.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE